IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-HC-2112-D

| | | |
|---|---|---|
| ANTHONY DEVON HERRING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ALVIN W. KELLER,[1] | ) | |
| | ) | |
| Respondent. | ) | |

On July 29, 2008, Anthony Devon Herring ("Herring" or "petitioner") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 [D.E. 1]. Herring named the State of North Carolina as respondent. On October 29, 2008, respondent filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure [D.E. 8], and the court notified Herring of his right to respond [D.E. 11]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On November 25, 2008, Herring filed a response in opposition to the motion for summary judgment [D.E. 12], and on January 5, 2009, he filed a supplemental response [D.E. 13]. On September 10, 2009, the court denied without prejudice respondent's motion for summary judgment and allowed Herring to amend his petition to name the proper party respondent [D.E. 14]. On September 17, 2009, petitioner amended his petition to name Secretary of Correction Alvin W. Keller as respondent [D.E. 15]. See 28 U.S.C. § 2242; Rumsfeld v. Padilla, 542 U.S. 426, 434–35 (2004). On September 18, 2009, respondent filed a second motion for summary judgment [D.E. 16]. On December 21, 2009, the court notified Herring of his right to respond [D.E. 17]. On January 15, 2010, Herring filed

---

[1] The court has revised the case caption to reflect the proper party respondent.

his response [D.E. 19], and adopted his original brief in opposition to respondent's motion [D.E. 12, 13]. For the reasons explained below, the court grants respondent's second motion for summary judgment [D.E. 16].

I.

On July 2, 2004, a Wake County Superior Court jury convicted Herring on two separate charges, first-degree felony murder based on the underlying felony of trafficking in cocaine with the use of a deadly weapon (03 CRS 69995) and trafficking in cocaine by possession (03 CRS 69996). See St. Ct. R. Vol. 7 of 7, Trial Tr. 700:17–701:12; see also Pet. ¶¶ 1, 5–6.[2] The court arrested judgment on the trafficking-in-cocaine-by-possession conviction (03 CRS 69996) and sentenced Herring to life imprisonment without parole for first-degree felony murder. Pet. ¶¶ 3, 5; Respt.'s Mem. Supp. Mot. Summ. J. ("Mem. Supp.") 1. Attorney Thomas C. Manning represented Herring at trial. Pet. ¶ 16.

Herring filed a direct appeal. Id. ¶ 9(a). On March 7, 2006, the North Carolina Court of Appeals upheld the conviction. State v. Herring, 176 N.C. App. 395, 626 S.E.2d 742 (2006); see Pet. ¶ 9(c). On October 5, 2006, the North Carolina Supreme Court dismissed the appeal for lack of a substantial constitutional question. State v. Herring, 360 N.C. 651, 637 S.E.2d 183 (2006); Pet. ¶ 9(g). On March 19, 2007, the United States Supreme Court denied Herring's petition for a writ of certiorari. Herring v. North Carolina, 549 U.S. 1293 (2007); Pet. ¶ 9(h). On appeal, Assistant Appellate Defender Anne M. Gomez represented Herring. Pet. ¶ 16(e).

On October 17, 2007, Herring filed a pro se motion for appropriate relief ("MAR") with the Wake County Superior Court. Mem. Supp, Ex. 8; Pet. ¶ 11(a). Herring alleged that his conviction

---

[2]The jury found Herring not guilty of first-degree murder based on the felony of robbery. See St. Ct. R. Vol. 7 of 7, Trial Tr. 700:21–25.

2

was based on violations of his constitutional rights under the Sixth and Fourteenth Amendments. See id. Herring argued prosecutorial misconduct during his direct appeal, insufficient evidence to support his convictions, and ineffective assistance of appellate counsel. Id. ¶ 11(a)(5). On April 21, 2008, the court summarily denied the MAR. Id. ¶11(a)(7)–(8); see Mem. Supp., Ex. 9. On June 11, 2008, Herring filed a pro se petition for a writ of certiorari with the North Carolina Court of Appeals. Pet. ¶11(b); see Mem. Supp., Ex. 10. Again, Herring alleged prosecutorial misconduct during his direct appeal, insufficiency of evidence to support a charge of trafficking in cocaine and a common purpose, and ineffective assistance of appellate counsel. Pet. ¶ 11(b)(5); see Mem. Supp., Ex. 10. On June 24, 2008, the state responded in opposition. Mem. Supp., Ex. 11. On June 27, 2008, the North Carolina Court of Appeals denied certiorari. Mem. Supp., Ex. 12; see Pet. ¶ 11(b)(8).

Under 28 U.S.C. § 2254, Herring asks the court to dismiss or order a new trial on all charges. Pet. 14. Herring bases his request on four grounds: (1) insufficient evidence to support his felony-murder conviction in violation of the Fourteenth Amendment; (2) insufficient evidence to support his conviction for trafficking in cocaine by possession in violation of the Fourteenth Amendment; (3) prosecutorial misconduct on direct appeal in violation of the Sixth and Fourteenth Amendments; and, (4) ineffective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments. Id. at 5–6, 8, 10.

The North Carolina Court of Appeals summarized the facts as follows:

> In the light most favorable to the State, the evidence at trial showed that defendant and Moore [the victim] knew each other for some time prior to the shooting. Defendant knew that Moore was a drug dealer and would often find buyers for Moore's drugs. Defendant agreed to "hook up" his cousin Russell with Moore so that Russell could purchase some drugs. Defendant and Russell met in Dunn, where defendant lived, and the two drove separately to the Raleigh apartment where Moore lived.

3

> Defendant arrived first, and went upstairs to Moore's second-floor apartment where he and Moore watched television. Defendant testified that Moore placed a large amount of cocaine on the kitchen counter top. Defendant then got a call from Russell and went downstairs to meet him. When the two came back upstairs, Moore showed Russell the cocaine and they discussed the transaction. Defendant, who had returned to watching television, overheard Russell say he needed to go outside to get more money. Moore and defendant remained inside, and then Russell came back up the steps brandishing a gun and stating that the police were coming.
>
> Defendant then testified that Russell and Moore began fighting over the drugs in Moore's hand. Defendant was ducking for cover, but tried to hide some cocaine he saw in the kitchen under a coat before hearing a gunshot and running downstairs to his car. He testified that he thought Russell was going to shoot him as well. A witness from the apartment complex testified that she heard several gunshots and saw two men leave Moore's apartment, one a bit of time after the other, and go to separate cars. The first man who left was carrying a bag and ducking down, as if he were going to be shot; the second man just went straight to his car.
>
> Moore called his girlfriend, Kandrina Trollinger, and told her he was shot. He also said, "Anthony set me up." Moore died later as a result of gunshot wounds to the chest and right leg. Upon investigation, police determined that a large bag of cocaine, which was found on the kitchen floor near Moore, weighed 750.7 grams. There were several other bags of cocaine throughout the apartment, as well as $27,000.00 in cash in a shaving kit and a gun near the TV.
>
> When presented with this evidence the jury determined defendant was guilty of felony murder, and that trafficking or attempted trafficking in cocaine with a deadly weapon was the underlying felony. The jury rejected the State's alternative theory that Moore's death was the result of an armed robbery or attempted armed robbery. The jury also found defendant guilty of a separate charge of trafficking in cocaine. The trial court sentenced defendant to life in prison without parole on the felony murder conviction and arrested judgment on the separate trafficking conviction.

Herring, 176 N.C. App. at 396–97, 626 S.E.2d at 744.

II.

In considering respondent's motion for summary judgment, the court views the evidence in the light most favorable to Herring and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–52 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the court

4

need not accept petitioner's "legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (quotations omitted) (discussing Rule 12(b)(6) of the Federal Rules of Civil Procedure); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009).

Respondent attached the following documents to his memorandum in support of the motion for summary judgment [D.E. 9]: Ex. 1 (opinion and orders); Ex. 2 (record on appeal); Ex. 3 (petitioner's appellate opening brief); Ex. 4 (state's appellate response brief); Ex. 5 (petitioner's appellate reply brief); Ex. 6 (petitioner's notice of appeal and petition for discretionary review ("PDR")); Ex. 7 (state's motion to dismiss appeal and to deny PDR); Ex. 8 (MAR); Ex. 9 (order denying MAR); Ex. 10 (petition for certiorari); Ex. 11 (state's response to petition); and Ex. 12 (order denying certiorari).

A federal court cannot grant habeas relief in cases where a state court considered a claim on the merits, unless the state-court decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state-court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)–(2). A state-court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state-court decision "involves an unreasonable application" of Supreme Court law (1) "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) if the state court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it

5

should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407; see Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

The state court is not required to "cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one" and the federal habeas court is not required to "offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings." Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

First, Herring contends that there was insufficient evidence to support his felony-murder conviction. Pet. 5. The underlying felony involved trafficking in cocaine with the use of a deadly weapon. Herring, 176 N.C. App. at 397, 626 S.E.2d at 744. Herring claims that he did not know that Russell left the apartment to retrieve a gun and planned to shoot Moore. Herring asserts that the North Carolina Court of Appeals found that he "did not possess the mens rea to commit the underlying felony-trafficking in cocaine with a deadly weapon." Pet. 5 (emphasis omitted). Thus, Herring alleges that in order to find him guilty of first-degree murder, the jury needed to have determined that he acted in concert with Russell to traffic in cocaine by possession. Id. Herring notes, however, that the trial court did not provide an acting-in-concert instruction to the jury on the charge of trafficking in cocaine by possession. Id. Therefore, Herring maintains that the North Carolina Court of Appeals erred by finding that he acted in concert to trafficking in cocaine by possession. Id. Because Herring allegedly lacked the mens rea to support his conviction on the underlying felony of trafficking in cocaine with the use of a deadly weapon and because the jury

6

could not have found that he acted in concert with Russell on the second, separate trafficking-in-cocaine-by-possession charge, Herring claims that his felony-murder conviction violates the Fourteenth Amendment. See Petr.'s Mem. Opp'n Mot. Summ. J. ("Mem. Opp'n") 1.

In addressing a sufficiency-of-the-evidence claim, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1970) (emphasis omitted), overruled on other grounds by Schlup v. Delo, 513 U.S. 298 (1995). However, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the appropriate inquiry is "whether a state court determination that the evidence was sufficient to support a conviction was an 'objectively reasonable' application of [the standard enunciated in] Jackson." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (alteration in original) (quotation omitted).

Contrary to Herring's assertion, the North Carolina Court of Appeals did not conclude that petitioner lacked the "mens rea" to commit the underlying felony of trafficking in cocaine with use of a deadly weapon. See Herring, 176 N.C. App. at 398–99, 626 S.E.2d at 745. Rather, the court of appeals merely acknowledged Herring's difficulty in comprehending his life sentence without parole when he did not fire the gun that killed Moore or allegedly know that Russell obtained a gun and intended to use it during the drug transaction. See id. at 399, 401–02, 626 S.E.2d at 745, 747. Nevertheless, the court of appeals addressed Herring's argument, described the acting-in-concert doctrine, and concluded that the State provided sufficient evidence to prove that Herring committed felony murder based on the underlying offense of trafficking in cocaine with the use of a deadly weapon. Id. at 398–402, 626 S.E.2d at 745–47.

7

As for acting-in-concert, Herring argues that the North Carolina Court of Appeals "did not find that [he] joined Ronald Russell in common purpose i.e. acted in concert with Russell to commit the underlying felony-traffick[ing] in cocaine with a deadly weapon — [which] the felony murder was based on." Petr.'s Supp. Mem. Opp'n Mot. Summ. J. 2. However, the court of appeals agreed with the State that "Russell trafficked in cocaine with a deadly weapon, presumptively by constructively possessing the drugs, and since [Herring] acted in concert with Russell then [Herring] is guilty of the felony as well." Herring, 176 N.C. App. at 399, 626 S.E.2d at 745 (emphasis omitted). The court of appeals then explained that under the acting-in-concert theory,

> [i]f two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose or as a natural or probable consequence thereof.

Id. at 399, 626 S.E.2d at 745 (alteration omitted) (quoting State v. Barnes, 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997)). "[I]t is not strictly necessary, however, that the defendant share the intent or purpose to commit the particular crime actually committed." Id. at 400, 626 S.E.2d 746 (quotation omitted). "[R]ather it is sufficient if the crime charged is a natural occurrence of, or flows from a common criminal purpose." Id., 626 S.E.2d at 746.

In reviewing the record, the North Carolina Court of Appeals concluded that the State presented substantial evidence to show that "[t]he common plan here is one to obtain or facilitate the possession of cocaine." Id. at 399–400, 626 S.E.2d at 745–46. Herring "knew Moore was a large scale drug dealer and had a substantial amount of drugs and money at his apartment." Id. at 399, 626 S.E.2d at 746. Herring previously had facilitated drug transactions for Moore. Id., 626 S.E.2d at 746. Although Moore had been robbed in the past, Moore trusted and permitted Herring to visit him at his apartment. Id., 626 S.E.2d at 746. In addition, the court of appeals noted that the

8

State presented testimony from Darren Wright, a convicted felon who was incarcerated with Herring, recounting their conversations about the event. Id. at 399–400, 626 S.E.2d at 746. Wright testified that Herring told him that Herring and Russell "plotted" to rob Moore of his drugs and money, and when Moore resisted, Russell shot him. Id. at 400, 626 S.E.2d at 746. Herring and Russell then fled the apartment without taking anything. Id., 626 S.E.2d at 746. Herring admitted that he arranged the meeting between Moore and Russell, who at that time was on pre-trial release on an armed-robbery charge. Id., 626 S.E.2d at 746. In the apartment, Herring saw Moore show Russell a large amount of cocaine. Id., 626 S.E.2d at 746. Herring also observed Moore's gun near the television. Id., 626 S.E.2d at 746. The court of appeals also mentioned Moore's dying declaration to his girlfriend that Herring "set him up." Id., 626 S.E.2d at 746. Thus, the court of appeals concluded that there was sufficient evidence to support the jury's conclusion that Russell and Herring acted in concert. Id. at 399–400, 626 S.E.2d at 745–46.

In North Carolina, "'[a]ll that is required to support convictions for a felony offense and related felony murder is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction.'" Id. at 398, 626 S.E.2d at 745 (quoting State v. Trull, 349 N.C. 428, 449, 192, 509 S.E.2d 178, 192 (1998) (citation and quotation omitted)); see State v. Lowry, 679 S.E.2d 865, 873 (N.C. Ct. App. 2009). "[W]hether there is sufficient evidence to show that the defendant either committed the killing himself, intended that the killing take place or even knew that the killing would take place is irrelevant for purposes of determining defendant's guilt under the felony murder rule." State v. Barrett, 343 N.C. 164, 176, 469 S.E.2d 888, 895 (1996) (quotation omitted). Accordingly, the court of appeals stated that "[a]s long as [Herring] joined with Russell in committing a crime, he is responsible for all other crimes committed in a single transaction that are in furtherance of the common purpose or plan." Herring, 176 N.C. App. at 399,

9

626 S.E.2d at 745 (emphasis in original). Because Russell shot and killed Moore "within moments" of returning to the apartment with the gun to complete the drug transaction, the court of appeals concluded that the evidence was sufficient to establish the single-transaction component required to support Herring's conviction for felony murder based on the underlying felony of trafficking in cocaine with a deadly weapon. Id. at 401–02, 626 S.E.2d at 747; see Trull, 349 N.C. at 449, 509 S.E.2d at 192.

Herring's concern that the jury did not receive an acting-in-concert charge for the second, separate trafficking-in-cocaine-by-possession charge does not create a viable constitutional claim. That trafficking charge was not the underlying felony for his felony-murder conviction. See Herring, 176 N.C. App. at 397, 626 S.E.2d at 744. As for Herring's conviction on the underlying felony of trafficking in cocaine with a deadly weapon, the trial court gave the jury an acting-in-concert instruction. See St. Ct. R. Vol. 7 of 7, Trial Tr. 664:23–665:25.

The record demonstrates why the North Carolina Court of Appeals found that Herring acted in concert with Russell. Herring has failed to rebut this finding. See 28 U.S.C. § 2254(e)(1); Sharpe, 593 F.3d at 378. Furthermore, Herring has failed to establish that the court of appeals' decision concerning the felony-murder conviction was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1)–(2); Renico, 130 S. Ct. at 1862. Therefore, the court rejects Herring's first ground for relief.

Next, Herring alleges that there was insufficient evidence to support his conviction for trafficking in cocaine by possession. Pet. 6–8; see Mem. Opp'n 5–6. According to Herring, the State's burden required proof of actual or constructive possession. Pet. 6. Herring then quotes the North Carolina Court of Appeals' statement that "the State made no contention petitioner had actual

10

or constructive possession of the cocaine." Id. (emphasis omitted) (quoting Herring, 176 N.C. App. at 398–99, 626 S.E.2d at 745). Accordingly, Herring argues the State failed to meet its burden of proof for trafficking in cocaine by possession. See Pet. 6.

Herring's quotation is misleading and fails to support his argument. The court of appeals actually said:

> To show possession, the State must provide substantial evidence that: 1) defendant had actual possession; 2) defendant had constructive possession; or 3) defendant acted in concert with another to commit the crime. State v. Garcia, 111 N.C. App. 636, 639–40, 433 S.E.2d 187, 189 (1993) (citing State v. Diaz, 317 N.C. 545, 552, 346 S.E.2d 488, 493 (1986), overruled on other grounds by State v. Hartness, 326 N.C. 561, 566, 391 S.E.2d 177, 180 (1990)). There is no contention by the State that defendant had actual or constructive possession of the cocaine; instead, it contends that Russell trafficked in cocaine with a deadly weapon, presumptively by constructively possessing the drugs, and since defendant acted in concert with Russell then defendant is guilty of the felony as well. We ultimately agree.

Herring, 176 N.C. App. at 398–99, 626 S.E.2d at 745. The court of appeals was discussing the felony-murder conviction and then explained how defendant acted in concert with Russell and explained why the jury verdict was justified. See id. at 401, 626 S.E.2d at 746–47. Thus, the quotation does not negate the trial evidence concerning the second, separate trafficking-in-cocaine-by-possession conviction.

Herring also cites the trial court's decision to arrest judgment on the trafficking-in-cocaine-by-possession conviction. As mentioned, the jury convicted Herring of both felony murder and trafficking in cocaine by possession. In light of the guilty verdict for felony murder, Herring's attorney asked the court to arrest judgment on his conviction of trafficking in cocaine by possession (03 CRS 69996). St. Ct. R. Vol. 7 of 7, Trial Tr. 715:4–8; cf. State v. Gardner, 315 N.C. 444, 460, 340 S.E.2d 701, 712 (1986) (recognizing that a defendant "may not be punished both for felony murder and for the underlying 'predicate' felony, even in a single prosecution"). The State did not

11

object to arresting judgment on the possession conviction in light of Herring's life sentence for felony murder, and the trial court arrested judgment on the possession conviction. See St. Ct. R. Vol. 7 of 7, Trial Tr. 715:15–716:3. The fact that the trial court arrested judgment second, separate trafficking-in-cocaine conviction does not mean that the trial court believed that there was insufficient evidence to support that conviction.

In sum, Herring's attack on the facts underlying his conviction fails. See, e.g., 28 U.S.C. § 2254(e)(1). Herring also fails to establish that the court of appeal's decision concerning the evidence was contrary to, or involved an unreasonable application of, clearly established federal law. See id. § 2254(d)(1)–(2). Accordingly, the court rejects Herring's second ground for habeas relief.

Next, Herring asserts "prosecutorial misconduct" during direct his appeal in violation of his Sixth and Fourteenth Amendment rights. Pet. 8; see Mem. Opp'n 6–8. Specifically, Herring claims that the State's appellate counsel erroneously represented, outside the record, that he acted in concert with Russell. Pet. 8; see Mem. Opp'n 6. As a result of this alleged misrepresentation, Herring argues that the court of appeals unconstitutionally upheld his conviction for felony murder. Mem. Opp'n 7.

In its appellate brief, the State argued that the evidence was sufficient to support Herring's conviction on felony murder based upon the underlying felony of trafficking in cocaine by possession with the use of a deadly weapon. See Mem. Supp., Ex. 4 at 15–23. The State also argued that the evidence was sufficient to support defendant's conviction of trafficking in cocaine by possession. Id., Ex 4 at 28–33. Herring argues that the State's brief misled the court of appeals into believing that Herring acted in concert to traffic in cocaine by possession.

Notably, Herring did not assert in his reply brief that the State's brief contained arguments outside the record or was misleading. See Mem. Supp., Ex. 5. Rather, Herring first asserted such

12

a claim in his MAR. See Mem. Supp., Ex. 8. The MAR court summarily denied and dismissed Herring's request. See Mem. Supp., Ex. 9. The MAR court found that Herring "was in a position to adequately raise the ground or issue underlying the motion [on direct appeal] and did not do so." Id. Moreover, the court of appeals denied Jones' petition for certiorari concerning the MAR court's ruling. See Mem. Supp., Ex. 12. Jones never sought review in the North Carolina Supreme Court.

Absent a valid excuse, a state prisoner must exhaust all available remedies in state court before seeking federal habeas corpus relief. See 28 U.S.C. § 2254(b)(1)(A). To satisfy the exhaustion requirement, a state inmate must properly present his claims to the state court. See Woodford v. Ngo, 548 U.S. 81, 92 (2006); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). To properly present a claim, a state inmate must present to the state court the substance of his federal habeas corpus claim, including both the operative facts and the controlling legal principles. See, e.g., Baldwin v. Reese, 541 U.S. 27, 29–33 (2004); Pethtel v. Ballard, No. 09-6075, 2010 WL 3245437, at * 6–7 (4th Cir. Aug. 18, 2010); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). This exhaustion requirement compels a habeas petitioner to "invok[e] one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845.

Herring failed to exhaust available state remedies on his claim of prosecutorial misconduct on appeal. See, e.g., Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam). Moreover, if he tried to raise the claim now, the claim would be barred under North Carolina's procedural-bar statute. See N.C. Gen. Stat. § 15A-1419(a)(3), (b); Rose v. Lee, 252 F.3d 676, 683–84 (4th Cir. 2001); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998). As such, the claim is deemed exhausted, but is procedurally defaulted. See, e.g., Woodford, 548 U.S. at 93; Matthews, 105 F.3d at 911–12. Furthermore, Herring cannot demonstrate cause and actual prejudice, or a fundamental miscarriage

13

of justice, to overcome the procedural default. See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Baker, 220 F.3d at 288. Thus, the claim is barred.

Alternatively, and in any event, even if Herring could overcome his procedural default, the claim fails. This court has reviewed the appellate record, including the briefs on appeal. The State did not mislead the North Carolina Court of Appeals. Compare Mem. Supp., Ex. 3 at 30–35, with Mem. Supp, Ex. 4 at 28–33. Thus, Herring's claim of "prosecutorial misconduct" fails.

Finally, Herring alleges that he received ineffective assistance of counsel on direct appeal in violation of his Sixth and Fourteenth Amendment rights. Pet. 10; see Mem. Opp'n 8–9. Herring again cites the State's allegedly misleading arguments to the North Carolina Court of Appeals. Essentially, Herring complains that his appellate counsel failed to notify the court of appeals that the State argued outside the record on appeal. See Mem. Opp'n 8–9.

Herring failed to exhaust this claim in state court or to prove cause and prejudice for procedurally defaulting the claim, or a fundamental miscarriage or justice. See 28 U.S.C. § 2254(b)(1)(A); see also, e.g., Woodford, 548 U.S. at 93; O'Sullivan, 526 U.S. at 845; Gray, 518 U.S. at 162; Coleman, 501 U.S. at 750; Baker, 220 F.3d at 288. Thus, the claim is barred.

Alternatively, this claim fails on the merits. To establish ineffective assistance of appellate counsel in violation of the Sixth Amendment, a petitioner must show that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, petitioner would have prevailed on appeal. See Smith v. Robbins, 528 U.S. 259, 285–86 (2000) (citing Strickland v. Washington, 466 U.S. 668, 687–94 (1984)). Counsel is not required to raise every nonfrivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 751–52 (1983). The court must presume appellate counsel "decided which issues were most likely to afford relief on

14

appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quotation omitted).

As discussed, the court has reviewed the appellate record, including the briefs on appeal. The State did not mislead the North Carolina Court of Appeals. Thus, Herring has failed to show that his appellate counsel's representation was objectively unreasonable or that the outcome would have been different but for counsel's alleged ineffectiveness. See, e.g., Robbins, 528 U.S. at 285–86.

In sum, Herring is not entitled to habeas relief under section 2254. Thus, the court grants respondent's second motion for summary judgment [D.E. 16].

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to summary judgment, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the district court has adjudicated and denied a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. See Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Where a court dismisses a petitioner's constitutional claims on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists

15

Case 5:08-hc-02112-D  Document 20  Filed 08/20/10  Page 15 of 16

of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose, 252 F.3d at 684 (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 485.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds that reasonable jurists would not find the court's treatment of any of Herring's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability.

III.

As explained above, the court GRANTS respondent's second motion for summary judgment [D.E. 16] and DISMISSES petitioner's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. The Clerk of Court shall close this case.

SO ORDERED. This 20 day of August 2010.

JAMES C. DEVER III
United States District Judge

16